IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY SOMMER,<br>        Plaintiff,<br>v.<br><br>GREENWOOD GAMING SERVICES COMPANY,<br>        Defendant. | CIVIL ACTION<br><br>NO. 10-2852 |

## MEMORANDUM OPINION

Tucker, J.                                                                                                              July 24, 2012

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 10), and Plaintiff's Response thereto (Doc. 12). Upon consideration of the parties' motions with exhibits and declarations, the Court will deny Defendants' Motion for Summary Judgment.

### I. BACKGROUND

This case arises out of alleged gender discrimination in the employment context. Plaintiff, Tammy Sommer ("Sommer"), brings this action against her former employer, Defendant Greenwood Gaming Services Company ("Greenwood Gaming"), and sets forth the following claims in her Complaint: (1) violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.; (2) violations of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. (the "PHRA"); and (3) violations of Pennsylvania common law. (Compl. ¶ 1.)[1]

---

[1] It is undisputed that Plaintiff has exhausted all administrative remedies. On August 21, 2007, Plaintiff filed a complaint with both the Equal Employment Opportunity Commission (EEOC) and the PHRA. The EEOC issued a Notice of Right to Sue (the "Notice") on March 15, 2010. The present suit, filed by Plaintiff on June 14, 2010, was timely filed within ninety (90) days of receipt of the EEOC Notice and within the time limitations set forth by the PHRA. Plaintiff asserts state law claims under the PHRA and common law pursuant to supplemental jurisdiction permissible under 28 U.S.C. § 1367.

1

## A. Events Leading to Plaintiff's Termination

Plaintiff, a Pennsylvania resident, is an adult female who at all relevant times, was employed by Defendant Greenwood Gaming. Defendant Greenwood Gaming is located in Pennsylvania, where all actions complained of took place. (Compl. ¶¶ 4-5.)

On or about December 4, 2006, Plaintiff began working as a surveillance officer in the Defendant's Bensalem, Pennsylvania facility. Prior to this position, Plaintiff Sommer was employed in surveillance positions at Kohl's and Shop Rite. Sommer's earned $14 per hour in her position with Defendant, was expected to work 40 hours per week with overtime, and worked ten hour shifts. At all relevant times, Plaintiff was the only female surveillance officer and reported to Amy Schlier. (Compl. ¶¶ 7-9.)

According to Plaintiff Sommer, Schlier treated Plaintiff differently than similarly situated male co-workers in the following ways: (1) Sommer was not permitted to leave the surveillance room for bathroom breaks without permission, while the same rule was not imposed on her male co-workers; (2) Sommer's questions went unanswered by Schlier, who responded to questions from Sommer's male colleagues; (3) Schlier instructed Sommer not to talk to other employees "as [all] Sommer would do is flirt"; (4) following Sommer on security cameras when she went to the restroom; and (5) frequently commenting on Sommer's attire and makeup, despite the lack of a company dress code. (Compl. ¶¶ 10-13.)

Plaintiff Sommer also alleges that Schlier and male co-workers subjected her to a hostile work environment by, *inter alia*, questioning Plaintiff's sexual orientation and making explicit comments about Plaintiff's sexuality, engaging in prolonged explicit conversations about their

2

sexual activity, using the surveillance equipment to zoom in on anatomical parts of female patrons, and making lewd noises in close proximity to Plaintiff. (Compl. ¶¶ 14-19.)

On February 17, 2007, Plaintiff complained of this treatment to Phil Hawkins, the second in command, telling him that the environment was intolerable. In response, Hawkins told Plaintiff Sommer to "stick it out". Five days later, on February 22, 2007, Hawkins told Plaintiff Sommer that she was terminated from employment with Defendant Greenwood Gaming. When Plaintiff questioned Mr. Hawkins about whether her termination was due to poor performance, Mr. Hawkins responded that Plaintiff's performance was not at issue, and that she simply "butted heads with upper management." (Compl. ¶¶ 21-25.)

## B. Defendant Greenwood Gaming's Policies

During Plaintiff Sommer's employment with Defendant Greenwood Gaming, the Defendant maintained an Employee Handbook (the "Handbook") which set forth several policies and procedures. This handbook provided notice to new employees about the terms of their employment, acceptable and prohibited conduct, as well as the consequences of violating company policies and procedures. The relevant portions of the Handbook are below.

First, Greenwood Gaming's Handbook states the following about the probationary period for new employees:

> "**INTRODUCTORY PERIOD** – The first 90 calendar days in your new position are your introductory period. This time period gives you and your supervisor the opportunity to evaluate your compatibility with your new job. Your supervisor will evaluate your performance and suitability for continued employment and overall fit with the organization. You can decide if the new position meets your expectations. You or your supervisor may end the

employment relationship at any time and for any reason, without notice during the introductory period. Employees who leave the Company during their introductory period are not eligible to be paid for any accrued, unused vacation time."

Greenwood Gaming Services, Inc. Employee Handbook, p.30.

Second, the Handbook sets forth the following concerning its harassment policy:

"**HARASSMENT-FREE WORKPLACE** – Greenwood Gaming Services, Inc. Expressly prohibits discriminatory harassment of any form. Our Company does not tolerate harassment or discrimination of employees by other employees, customers, or any person we conduct business with. We do not tolerate discrimination or harassment based on race, color, sex, age, religion, ancestry, national origin, disability, sexual orientation, service in the U.S. Armed Forces, or any other status or condition protected by federal, state or local law."

Greenwood Gaming Services, Inc. Employee Handbook, pp.41-42.

Third, the Handbook states the following about its retaliation policy:

"**RETALIATION** – No employee may retaliate in any manner against another employee directly or indirectly as a result of any complaint or report of illegal, improper or prohibited conduct. Federal and state laws, including the 1964 Civil Rights Act, as amended, and the Americans with Disabilities Act (ADA) protect employees from being subjected to retaliatory actions or behavior. Retaliation is also strictly prohibited against anyone working at the Philadelphia Park Casino property."

Greenwood Gaming Services, Inc. Employee Handbook, p. 42.

### D. Procedural History

In June 2010, Plaintiff Sommer filed this suit in the United States District Court of the Eastern District of Pennsylvania against Defendant Greenwood Gaming for a finding that Defendant violated both federal civil rights laws and Pennsylvania state human rights laws. (Compl. ¶¶ 27-36.) Sommer alleges that Defendant's violations were intentional, and that she was harmed by Defendant's gender discrimination, the ensuing hostile work environment,

4

harassment, retaliation, and wrongful termination (Compl. ¶¶ 29, 31, 33, 35.) Accordingly, Sommer seeks that the Court: (1) declare that the acts and practices alleged violate Title VII and the PHRA; (2) award compensatory damages to cover Sommer's back pay and front pay; (3) award punitive damages; (4) award all costs associated with this action, including reasonable attorney's fees; and (5) award any other relief deemed appropriate by the Court. (Compl. ¶¶ 31, 36.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ P. 56(c). See Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris,

550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

### III. DISCUSSION

The Title VII and PHRA claims set forth in Plaintiff's Complaint are subject to the same common law framework, as Pennsylvania Courts have interpreted the two statutes interchangeably concerning employment discrimination claims.[2] Thus all analyses below that reference Title VII are equally applicable to Plaintiff's PHRA Claims.

A. Plaintiff's Gender Discrimination Claim

---

[2] See Manning v. Temple Univ., 157 F. App'x 509, 513 (3d Cir. 2005); Weston v. Pennsylvania, 251 F.3d 420, 426 n.3 (3d Cir 2001); Jones v. School Dist. Of Phila, 198 F.3d 403, 410 (3d Cir 1999).

6

Defendant Greenwood Gaming seeks summary judgment, pursuant to Fed R. Civ P. 56, and contends that Plaintiff's claims of gender discrimination under Title VII and the PHRA fail because Plaintiff provided no evidence of gender discrimination. The Court disagrees.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the United States Supreme Court established a burden shifting method of proof to be utilized in the analysis of Title VII discrimination cases.

The burden initially rests with the plaintiff to establish a prima facie case of discrimination. Id. at 802. To establish a prima facie case of discriminatory discharge, the plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action gives rise to an inference of unlawful discrimination. Id.; Roebuck v. Drexel University, 852 F.2d 715 (3d Cir. 1988); Texas Dep't. of Cmty., 450 U.S. at 253. A Plaintiff must "establish some causal nexus between his [or her] membership in a protected class" and the adverse employment decision. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003); Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995).

If the plaintiff establishes a prima facie case, the burden shifts to the employer defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. The defendant has a "relatively light burden" of articulating a legitimate non-discriminatory reason for a plaintiff's termination. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). A defendant "need not prove that the tendered reason actually motivated its behavior" but only that it may have. Id.

Once the defendant employer sets out a legitimate non-discriminatory reason for the adverse employment action, the burden of persuasion shifts back to the plaintiff employee to show that the defendant's proffered reason is mere pretext for the defendant's discrimination. Fuentes, 32 F.3d at 763; McDonnell Douglas, 411 U.S. at 804. To prove pretext by the defendant employer, plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005).

In the present matter, it is undisputed that Plaintiff Sommer satisfies the first three requirements of the McDonnell-Douglas prima facie test. Sommer, as a female, is a member of a protected class for purposes of Title VII. There is no evidence that Sommer was unqualified for her position as surveillance operator. To the contrary, it is undisputed that Sommer's employment was contingent upon her receipt of her Pennsylvania Gaming Control Board License, which taken together with her prior surveillance work experience at Kohl's and Shop Rite, made her qualified for the position with Defendant. Additionally, there is no question that Sommer suffered an adverse employment action when she was terminated from employment with Defendant Greenwood Gaming on February 22, 2007.

Thus, the matter at issue concerning whether Sommer has established a prima facie case is whether it can be inferred, based on the record, that her termination was based on unlawful gender discrimination. The Court finds that the facts on the record, taken in a light most favorable to Plaintiff, support such an inference under the law.

To satisfy the fourth prong of the prima facie inquiry, there must be a causal connection between the adverse employment action suffered and plaintiff's membership in a protected class.

Sarullo, 352 F.3d at 798 (stating that the plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision at issue).

Here, Plaintiff Sommer submits the following in support of an inference of discrimination concerning her termination from Greenwood Gaming: (1) she was treated less favorably than her male counterparts, who were also surveillance operators, as Plaintiff avers that she was the only woman and person required to ask permission to take breaks, and was followed on camera when she did so; (2) she was treated less favorably than her male counterparts who received responses to their work-related questions, while Plaintiff's questions went unanswered by her supervisor, Schlier; (3) a hostile work environment was suffered by Sommer due to the daily taunts concerning Plaintiff's sexuality, and lewd behavior from her male co-workers and supervisor, about which Sommer communicated directly to two management supervisors, but which Defendant failed to address; (4) a mere five days after communicating to manager Phil Hawkins that she was suffered harassment, Plaintiff was terminated by Defendant, and was told that the reason for her termination was not poor performance, but was instead due to her inability to see eye-to-eye with management.

Defendant avers that the above facts do not show evidence of gender discrimination. Moreover, Defendant disputes the fact that Plaintiff complained to manager Phil Hawkins about being sexually harassed. The Court finds, viewing the current evidence in a light most favorable to Plaintiff, that Plaintiff has submitted enough evidence such that there remains a genuine issue of material fact as to whether an inference of gender discrimination may be found.

The Third Circuit has determined that a causal connection between a Defendant employer's actions and the adverse employment action suffered by a plaintiff may be inferred

where there is an unusually suggestive temporal proximity between the two events. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). The Court finds that here, where Plaintiff submits that she complained about the discrimination she suffered just five days prior to being fired, that such an unusually suggestive level of temporal proximity exists making it likely that Plaintiff has fulfilled her burden of making out a prima facie case of gender discrimination.

Once the plaintiff establishes a prima facie case, the burden shifts to the employer defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. This "relatively light burden" requires only that the defendant employer provide evidence that if "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes, 32 F.3d at 763 (citing Hicks,113 S. Ct. at 2748).

Despite Defendant's proffered legitimate rationale that Plaintiff was terminated solely for performance issues, there is nothing on the record to support this position other than the deposition testimony of Defendant's Director of Surveillance, David Norcutt, and an affidavit submitted by former supervisory employee Phil Hawkins. The statements issued by Norcutt and Hawkins are in direct opposition to Plaintiff's deposition testimony concerning what she was told about the reason for her termination. Defendant offers no other evidence to support the proffered legitimate business rationale that Plaintiff's termination was due to performance issues, thus Defendant's disputed assertions cannot be taken as true. Thus, this issue boils down to a credibility determination between Plaintiff's testimony that she was told that her firing was not due to performance, and that of Defendant's employee and former employee, stating the

opposite. Such a determination is properly heard before a jury, and is outside the ambit of the Court's authority.[3]

For the above stated reasons, the Court agrees with Plaintiff. Defendant has failed to prove that there exists no genuine issue of material fact. Accordingly, Defendant is not entitled to judgment as a matter of law concerning Plaintiff's gender discrimination claims.

**B.     Plaintiff's Hostile Work Environment Claim**

The identical burden shifting framework applied to Title VII gender discrimination claims is used to evaluate hostile work environment claims under Title VII. To maintain a prima facie case of a hostile work environment, a plaintiff must show that:

> "(1) he suffered intentional discrimination because of her protected activity; (2) the discrimination was pervasive and regular; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability."

Hamera v. County of Berks et al., 248 Fed. Appx. 422, 424 (3d Cir. 2007) (citation omitted). Within the sexual harassment context, a hostile work environment is created where unwelcome sexual conduct creates an intimidating, hostile, or offensive working environment, or ""such conduct has the purpose or effect of unreasonably interfering with an individual's work performance." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 58-59, 65 (1986).

---

[3] In the present matter, the Court declines to evaluate the credibility of contrary accounts given by Plaintiff and then surveillance supervisor Phil Hawkins concerning whether Plaintiff complained about her hostile work environment, and whether Plaintiff was terminated for performance issues. The Court, in determining whether summary judgment is appropriate, "may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 149 (2000) (citing Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555 (1990); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-55; Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, n. 6 (1962)).

11

Plaintiff avers in her Complaint that she suffered a hostile work environment due to the following: (1) persistent lewd and accusatory comments from her co-workers, with her supervisor's encouragement, concerning Plaintiff's sexuality and alleged flirting; (2) being followed on security camera during bathroom breaks, for which she was required to ask permission while male counterparts were able to take such breaks freely; (3) persistent lewd and explicit commentary by male co-workers about their sexual activities with women, where Plaintiff was the only female surveillance operator; (4) the use of surveillance cameras by Plaintiff's male colleagues to zoom in on portions of the female anatomy, as well as to follow women they deemed attractive; and (5) frequent generally crude behavior by male colleagues, including frequent belching an passing gas in close proximity to Plaintiff. Plaintiff submits that such actions led to her "emotional distress, anguish, shame, embarrassment, humiliation, intimidation, depression, nausea, headaches, sleeplessness, fear, anxiety, and anger, which has a detrimental effect on Plaintiff." (Compl. ¶ 29.)

Defendant counters with the following arguments: (1) Plaintiff fails to present evidence that Defendant had constructive notice about the alleged harassment and hostile work environment; (2) Defendant terminated Plaintiff for the legitimate reason of work performance issues and complaints from management during her 90 day probationary period; and (3) all employees were required to announce their exit before leaving the surveillance room for bathroom breaks.

The Court finds that a prima facie case has been made in this instance. Reviewing the record in a light most favorable to Plaintiff, it appears that prongs one through four of the test have been met, as it is undisputed by Defendant that Plaintiff suffered severe, pervasive sexually

12

offensive conduct, to the detriment of Plaintiff Sommer. Plaintiff's harm appears reasonable, given the fact that she was the only female surveillance operator amongst all male co-workers.

Additionally, the Court finds that there exists a basis for vicarious liability in this instance, as Defendant Greenwood Gaming was given constructive notice of the complained of sexual harassment and ensuing hostile work environment. In order for an employer to be found negligent for allowing a hostile work environment created by co-workers, a plaintiff must show that: (1) the employer knew or should have known about the harassment, and (2) the employer failed to take prompt, remedial action. Burlington Indus. v. Ellerth, 524 U.S. 742 (1998). Moreover, an employer's constructive notice of hostile work environment may be established by plaintiff showing that "an employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer, or where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it." Kunin v. Sears Roebuck & Co., 175 F.3d 289, 294 (3d Cir. 1999) (citation omitted).

Plaintiff's supervisor, Schlier, was present when the offensive, sexually charged conduct against Plaintiff took place, but did nothing to prevent such behavior. Thus, due to Schlier's supervisory position, and presence during the offensive acts, constructive notice could be imputed to Defendant Greenwood Gaming, as the harassment was so open that Schlier and thus the Defendant had to be aware of it. Furthermore, if Plaintiff's contention is to be believed, she directly complained about the hostile work environment to Phil Hawkins, which provided notice to Defendant. Despite the fact that Defendant denies that it received this direct complaint, Schlier's presence during the harassment provided constructive notice to Defendant. This, taken

together with Defendant's failure to remedy the harassing circumstances supports this Court's finding that Plaintiff successfully makes out a prima facie case of hostile work environment.

Further, Defendant's proffered rationale, as discussed above concerning Plaintiff's gender discrimination claim, is disputed based on the testimony provided by Plaintiff and Defendant's employees concerning whether Defendant's termination of Plaintiff was due to Plaintiff's poor performance.

Thus, the Court will deny Defendant's request for judgment as a matter of law concerning Plaintiff's hostile work environment claim.

### C. Plaintiff's Retaliation Claim

The Court notes that Defendant Greenwood Gaming's Motion for Summary Judgment fails to address Plaintiff's retaliation claim. Accordingly, Plaintiff's retaliation claim will stand in this matter.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that a reasonable jury, upon consideration of the undisputed evidence on the record, could find that Plaintiff suffered gender discrimination, sexual harassment, and/or retaliation at the hands of her previous employer, Greenwood Gaming. Thus, Defendant's motion for summary judgment is denied. An appropriate order follows.